**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN S. PICARD,**

      **Petitioner,**                    **CASE NO. 2:11-CV-712
JUDGE WATSON**
      **v.**                             **MAGISTRATE JUDGE ABEL**

**MICHELE MILLER, WARDEN,
Belmont Correctional Institution,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner John S. Picard, a state prisoner, brings this action for a writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the Magistrate Judge on the petition, respondent's Return of Writ, petitioner's Traverse and the exhibits of the parties. This case involves Picard's convictions after a jury trial in the Richland County Court of Common Pleas for forty-two counts of sexual battery. The trial court sentenced him to an aggregate term of forty years in prison plus five years post release control. The Ohio Court of Appeals affirmed petitioner's convictions on direct appeal. On December 23, 2011, however, the Ohio Fifth District Court of Appeals granted Picard's application to reopen the appeal pursuant to Ohio Appellate Rule 26(B) and reversed five of his convictions for sexual batter, remanding the case to the trial court for re-sentencing. *State v. Picard*, No. 2009CA0108, 2011 WL 6930161 (Ohio App. 5th Dist. Dec. 23, 2011).

In this federal habeas corpus petition, petitioner Picard asserts he was denied his right to a speedy trial, the trial court improperly failed to dismiss charges that violated the statute of limitations, he was denied due process by a generic indictment, amendments to the indictment, and lack of access to the grand jury transcript, he was denied a fair trial because the trial court refused to grant a mistrial, strike testimony of alleged victim G.R., instruct the jury on her assertion of the

Fifth Amendment, or dismiss charges involving G.R., the State failed to comply with discovery rules, failed to disclose exculpatory evidence and misused its pretrial supervision authority, verdict forms failed to support his convictions, and the trial court improperly sentenced him on duplicative charges.  Upon review of the record, the Magistrate Judge concludes that petitioner's claims are waived, fail to provide a basis for federal habeas corpus review or are without merit.  The Magistrate Judge therefore  **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> In 1990, appellant was hired as the youth pastor at the Marion Avenue Grace Brethren Church in Mansfield, Ohio. In his position at the church, appellant and his wife Sherry had regular contact with teenage girls and young adult females in the church.
>
> Appellant formed close relationships with several of the girls in the youth group, distancing these girls from their family and friends. He referred to this smaller group as "the family," which was made up of appellant and his wife, several of the girls in the youth group, and eventually the girls' husbands as they grew older and married. As the leader, appellant controlled nearly every aspect of their lives. Appellant influenced where the girls lived, who they dated or married, and what cars they purchased. Appellant spoke of having a large piece of land where the "family" could live in a large house with separate wings, sharing a common kitchen and dining area.
>
> H.G. began attending the Marion Avenue Church when she was twelve years old, and moved in with her great aunt and uncle after her parents died. She began babysitting appellant's children when she was sixteen. When she was sixteen, she and appellant began kissing and fondling. One night, after eating dinner with appellant's family, H.G. went to the basement with appellant to spot him while he was working out. Appellant had H.G. perform oral sex on him. Appellant explained to H.G. that it wasn't sinful because it wasn't sex. On another occasion, appellant and H.G. were in the bedroom of appellant's home naked. Appellant digitally penetrated H.G.'s vagina, but appel-

lant's son walked in before the encounter could go any further. H.G. left the area when she turned eighteen, but saw appellant one last time thereafter. Appellant drove her out into the country where they kissed and fondled each other, and H.G. performed oral sex on appellant.

S.S. began attending Marion Avenue Church in her sophomore year of high school. Her mother had divorced for a second time and she had to move in with her father. While involved with the youth group, S.S. would run errands with appellant. On one occasion they went for a motorcycle ride. Appellant reached between S.S.'s legs, claiming he was switching to an alternate gas tank. Like H.G., S.S. babysat appellant's children. On one occasion, appellant asked S.S. to stop at his house after a New Year's Eve party. When she arrived, the house was dark. Appellant took her into the bedroom, kissed her, pulled down her pants and touched her genital area. He asked her to say, "Fuck me." Tr. 215. She became afraid because she had never seen appellant behave in such a harsh manner. She ultimately said what he asked her to say, although no penetration occurred. On Sundays after church appellant began taking S.S. by the hand and leading her to his office, where they would kiss and stroke each other. Appellant told her that being a youth pastor was difficult and he was frequently under attack, and this was a form of comfort his wife could not give him.

During the summer of 2004, S.S. accompanied the youth group on a mission trip. While taking the garbage to the dumpster with appellant, he unzipped his pants and guided her head to his penis, asking her to put his penis in her mouth. He instructed her to perform oral sex on him in the back of a truck at a later time on the same mission trip. He told S.S. that this was something his wife could not do for him.

S.W. was an only child from what she considered a normal family. However, as she became more involved with appellant and Sherry through the youth group, her relationship with her parents deteriorated. In the fall of 1995, appellant asked S.W. to kiss him. By 1996, S.W. considered appellant to be her best friend. Appellant told her that best friends engage in sexual acts with each other, claiming that the Bible states that Jonathan and David were best friends who engaged in sexual behavior together. He also told S.W. that when the Bible says a pastor should be a one woman man that just means he can't be with two women at the same time. He explained to her that his job was very taxing, and he needed her to fill him back up. Around 1996 or 1997, he asked S.W. to perform oral sex on him in

the kitchen of his home. For the next ten years, she regularly engaged in oral sex and sexual intercourse with appellant. He told her it would be a worse sin for her not to have sex with him than it would be to have sex with him, because God was protecting their relationship. Sometimes when S.W. did not want to have sex with appellant she cried, and appellant told her he liked it when she cried.

G.R. attended the youth group at the Marion Avenue Church. She had been sexually abused by her father. G.R. also babysat for appellant and Sherry. When G.R. was 13 and appellant was driving her home after babysitting, he pulled into a wooded area and asked her to perform oral sex on him. Appellant told her that he believed God put her in his life for this special relationship because there were things Sherry could not do for him. Appellant and G.R. began engaging in oral sex and sexual intercourse on a weekly basis when she babysat for his children. Sometimes in his office in the church he would place her on his lap, rub her breasts and her genital area, and have her rub his genitals. During a game of hide and seek at a youth group overnighter at the church, appellant found G.R. hiding in the baptismal. He had G.R. perform oral sex on him in the baptismal. He told G.R. that he had consulted the Holy Spirit and had received peace that his relationship with G.R. was right. He told her that giving him oral sex was her God-given role as his comforter.

J.F. is G.R.'s step-sister. Between the ages of 18 and 20, she began giving appellant oral sex in his office and in a storage room at the church. In April of 1999, when J.F. was 20 years old, she began engaging in sexual intercourse with appellant. After she moved into her own apartment in October, 2001, she and appellant engaged in sex once or twice a week. Appellant told her if she didn't have sex with him, he would terminate their friendship and she would be shunned by the church. Appellant hit J.F. at times, and threatened to tie her up if she did not comply with his request for sex. Appellant told her that she was a special friend who had been chosen for him. He explained to her that their relationship was not different from those in the Bible, including Jonathan and David. He told her that in the Biblical account of the Last Supper where John leans on Jesus, it is possible that John had contact with Jesus' genitals, and also recounted the story where Abraham places his hand on another man's thigh to make an oath to support his claims that his relationship with J.F. was Biblically sanctioned.

L.R. was 14 years old when she began attending the church with a friend. She admired and trusted appellant and thought of him more

4

highly as a spiritual leader than anyone she had ever met. She longed to be a part of the group that was close to appellant and his wife. On one occasion when she was on the church bus alone with appellant, he told her that he thought she was very godly, and if anything happened to Sherry, L.R. is the kind of woman he would want for his wife. In 2004, L.R. asked to meet with appellant to learn how to memorize Scripture. When she went to appellant's office, he told her that things were hard and he needed comfort. He then placed L.R.'s hands on his genitals, telling her that his wife is not a comfort to him and L.R. is the only one he could trust. When decorating for a wedding shower at the church, appellant pulled L.R. into his office and asked her for oral sex. She refused. However, in September of 2004 appellant convinced L.R. to perform oral sex on him. Eventually the oral sex progressed into sexual intercourse, and the sexual behavior continued regularly through December of 2007. He explained that this was not adultery, telling L.R., "You were given to me by God. You were made just for me." Tr. 635.

In 2005, H.G. disclosed her involvement with appellant to a pastor at her new church. This pastor in turn relayed the allegations to the Marion Avenue church, and H.G. was called before a council of pastors. H.G.'s claims were discounted by the church, but the church held a series of meetings about whether to retain appellant as youth pastor. His other victims attended these meetings, either standing in full support of appellant or remaining silent. Many members of the church had become concerned about appellant's close relationships with young women in the congregation, with one member referring to the group as appellant's "harem." Tr. 229.

Although the congregation voted to retain appellant, he resigned from the church and made plans to form his own church with members of his "family." These plans fell apart in January of 2005 when S.S. confessed her relationship with appellant to her husband.

Initially, police were not concerned with relationships between appellant and the girls after they turned 18, believing them to be consensual relationships between adults. Appellant was initially indicted in Case No. 08-CR-545 for sexual battery against H.G. and G.R. when they were juveniles. After the nature of the control and mental and spiritual coercion appellant exerted over the girls became apparent to police, the State moved to amend the indictment to include offenses against H.G. and G.R. after they turned 18, and to amend the statutory subsection in counts nine through sixteen, which related to H.G., to allege a violation of R.C. 2907.03(A)(1) rather

5

than a violation of R.C. 2907.03(A)(9) because subsection (A)(9) was not in effect during the time period alleged in these counts.

Appellant was later indicted in 09-CR-111 for sexual battery against S.W., L.R., J.F. and S.S. The cases were consolidated for trial.

The case proceeded to jury trial in the Richland County Common Pleas Court. Following trial appellant was convicted of all charges and sentenced to an aggregate term of 40 years in prison, with 5 years mandatory post-release control.

*State v. Picard,* No. 2009 CA 0108, 2010 WL 5480653, at *1-3 (Ohio App. 5th Dist. Dec. 20, 2010).

Petitioner filed a timely appeal, in which he raised the following assignments of error:

> I. DEFENDANT-APPELLANT'S CONSTITUTIONAL AND STATUTORY SPEEDY TRIAL RIGHTS WERE VIOLATED BY THE STATE'S FAILURE TO BRING HIM TO TRIAL WITHIN 270 DAYS OF HIS ARREST.
>
> II. THE TRIAL COURT ERRED IN REFUSING TO DISMISS COUNTS OF THE INDICTMENT WHICH WERE FILED AFTER THE EXPIRATION OF THE APPLICABLE STATUTE OF LIMITATIONS.
>
> III. DEFENDANT-APPELLANT'S CONSTITUTIONAL AND DUE PROCESS RIGHTS WERE VIOLATED BY THE GENERIC FORM OF THE INDICTMENTS AND BILLS OF PARTICULARS AND BY REPEATED AMENDMENTS TO THE INDICTMENTS AND REFUSAL TO PERMIT GRAND JURY TRANSCRIPT INSPECTION, SUCH THAT HIS CONVICTIONS MUST BE REVERSED.
>
> IV. THE TRIAL COURT ERRED IN REFUSING TO DECLARE A MISTRIAL, DISMISS COUNTS INVOLVING G.R., STRIKE HER TESTIMONY OR INSTRUCT THE JURY AS TO THE ASSERTION OF HER FIFTH AMENDMENT RIGHTS.
>
> V. THE DEFENDANT WAS DENIED DUE PROCESS BY THE STATE'S FAILURE TO PROVIDE TIMELY DISCOVERY, FAILURE TO PROVIDE EVIDENCE FAVORABLE TO THE ACCUSED AND THE STATE'S MISUSE OF PRETRIAL SUPERVISION AUTHORITY, SUCH THAT THE CHARGES AGAINST HIM SHOULD HAVE BEEN DISMISSED.

>VI. THE VERDICT FORMS DO NOT SUPPORT DEFENDANT'S CONVICTIONS FOR 42 COUNTS OF SEXUAL BATTERY.
>
>VII. THE TRIAL COURT ERRED IN CONVICTING AND SENTENCING THE DEFENDANT ON DUPLICATIVE COUNTS.

*See id.* at *4. On December 20, 2010, the appellate court affirmed the judgment of the trial court. *Id.* On May 4, 2011, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Picard*, 128 Ohio St.3d 1482 (2011).

Picard filed a motion under Rule 26(B), Ohio Rules of Appellate Procedure, to reopen his appeal, arguing that appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim as to all eight counts of sexual battery against H.G. On April 14, 2011, the Court of Appeals granted the motion to reopen. Petitioner Picard presented to grounds to the appellate court:

>"THE TRIAL COURT ERRED BY CONVICTING MR. PICARD FOR SIX COUNTS OF SEXUAL BATTERY IN CASE NO. 2008–CR–545H WITHOUT SUFFICIENT EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
>
>"II. APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO RAISE A WINNING ISSUE ON APPEAL."

*State v. Picard*, 2011 WL 6930161, at *4 (Ohio App. 5th Dist. Dec. 23, 2011). On December 23, 2011, the appellate court reversed the judgment of the trial court convicting Picard of five counts of sexual battery and remanded the case to the trial court for re-sentencing. The Magistrate Judge is unable to determine from the record whether petitioner ever pursued an appeal with the Ohio Supreme Court.

On August 5, 2011, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Defendant/Petitioner's Constitutional and Statutory speedy trial rights were violated by the State's failure to bring him to trial within 270 days of his arrest.
>
> 2. The Trial Court erred in refusing to dismiss counts of the indictment which were filed after the expiration of the applicable statute of limitations.
>
> 3. Defendant/Petitioner's Constitutional due Process rights were violated by the generic form of the indictments and bills of particulars and by repeated amendments to the indictments and refusal to permit grand jury transcript inspection.
>
> 4. The Trial Court erred to the prejudice of the Defendant-Petitioner when it refused to declare a mistrial, dismiss counts involving Gretchen Rocks, strike her testimony o[r] instruct the jury as to the assertion of her Fifth Amendment rights.
>
> 5. The Defendant-Petitioner was denied Due Process by the State's failure to provide timely discovery, failure to provide evidence favorable to the accused and the State's misuse of pretrial supervision authority such that the charges against him should have been dismissed.
>
> 6. The verdict forms used do not support the Defendant-Petitioner's convictions for 42 counts of sexual battery.
>
> 7. The trial court erred to the prejudice of the Defendant-Petitioner by convincing and sentencing the Defendant-Petitioner on duplicative counts.

It is the position of the respondent that petitioner's claims fail to present an issue appropriate for federal habeas corpus relief, are procedurally defaulted, or are without merit.

## PROCEDURAL DEFAULT

Respondent argues that petitioner's grounds two through four, parts of ground five, and

grounds six and seven are procedurally barred from review in federal habeas corpus because petitioner failed to raise them in his motion for leave to appeal from the decision of the Ohio Court of Appeals on direct appeal affirming his convictions to the Supreme Court of Ohio.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the court has determined that a state

9

procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

Petitioner properly raised his habeas corpus claims on direct appeal.  He failed thereafter, however, to again raise claims two through four, six, seven, and his allegations in claim five that the State failed to provide exculpatory evidence and that pretrial supervision officers violated his attorney-client privilege on appeal to the Ohio Supreme Court.  *See Exhibit 14 to Return of Writ*. Further, he may now no longer do so, under Ohio's doctrine of *res judicata*.  *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural default.

The Magistrate Judge finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d

521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell,* 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir.1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Magistrate Judge concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, the Magistrate Judge is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still obtain review of this claim on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violation.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). The constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)). However, ineffective assistance of counsel cannot constitute cause where, as here, there was no constitutional right to counsel in the

11

proceeding in question. There is no constitutional right to counsel in direct appeal to the Ohio Supreme Court. *See Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 425 (6th Cir. 2003) (citing *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to counsel extends to the first appeal of right, and no further."); *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005)).

Beyond the four-part *Maupin* analysis, a habeas court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992).

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise [ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlu*p, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones*, 395 F.3d 577, 589–90 (6th Cir.2005). Petitioner has failed to meet this standard here.

12

Claims two through four, six, seven, and petitioner's allegations in claim five that the State failed to provide exculpatory evidence and that pretrial supervision officers violated his attorney-client privilege are procedurally barred from review in federal habeas corpus.

## CLAIMS ONE AND FIVE

In claim one, petitioner asserts he was denied his right to a speedy trial by the State's failure to bring him to trial within 270 days of his arrest. To the extent petitioner raises an issue regarding the alleged violation of State law, respondent correctly notes that this claim fails to present an issue appropriate for federal habeas corpus review. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 18 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

Moreover, petitioner failed fairly to present any federal constitutional claim regarding the alleged violation of his right to a speedy trial to the Ohio courts. In order to exhaust state remedies, a petitioner must first fairly present the substance of his federal habeas corpus claims to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

13

"The state courts must be provided with a fair opportunity to apply controlling principles to the facts bearing upon petitioner's constitutional claims." *Sampson v. Love*, 782 F.2d 53, 55 (6th Cir. 1986). Petitioner does not fairly present his claim simply because the necessary facts supporting a federal constitutional claim are present or because the constitutional claim appears self-evident. *Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir. 1983)(citing *Harless,* 459 U.S. at 6).  Furthermore, "[a] petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions employing constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993)(citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987)).  Courts normally require more than a single broad generalization that petitioner was denied a "fair trial" or "due process of law." *Franklin*, 811 F.2d at 326; *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir. 1984).  Petitioner, however, need not "cite book and verse on the federal constitution." *Picard,* 404 U.S. at 277 (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1960)).  The Sixth Circuit has strictly followed the requirement that petitioner fairly presented his federal constitutional claims to the state courts as a precondition to federal habeas review. *Weaver v. Foltz*, 888 F.2d 1097, 1098 (6th Cir. 1989)).

Here, although petitioner phrased his claim in the Ohio Court of Appeals as one regarding the alleged violation of his "constitutional and statutory speedy trial rights," he went on to argue the claim solely as a violation of Ohio's speedy trial statute, O.R.C. § 2945.71. *See* Exhibit 9 to Return of Writ.  The state appellate court likewise reviewed his claim in the context of the alleged violation of state law. *See State v. Picard*, 2010 WL 5480653, at *4-8.  Although petitioner referred, at one point, to the United States Supreme Court decisions in *Barker v. Wingo*, 407 U.S. 514 (1972) and *United States v. Marion,* 404 U.S. 307 (1971), both cases dealing with the United States

Constitution's guarantee of a criminal defendant's right to a speedy trial under the Sixth Amendment, petitioner referred to these cases solely in support of his argument that he was prejudiced by the State's alleged violation of Ohio's speedy trial statute. *See* Exhibit 9 to Return of Writ. Moreover, in his appeal to the Ohio Supreme Court, he plainly raised this claim solely as an alleged violation of state law. *See* Exhibit 14 to Return of Writ. Petitioner never referred to the United States Constitution or any federal state cases relying on federal law in support of this claim. He may now no longer do so, under Ohio's doctrine of *res judicata*. Further, he has failed to establish cause for such failure.

Petitioner thereby has waived any federal speedy trial claim for federal habeas corpus review. His claim under Ohio law fails to present an issue warranting federal habeas corpus relief.

Claim one is without merit.

## CLAIM FIVE

In claim five, petitioner asserts that the State failed timely to provide discovery under Rule 16 of the Ohio Rules of Criminal Procedure. This claim fails to present any issue of federal constitutional magnitude so as to warrant federal habeas corpus relief. 28 U.S.C. § 2254(a). Petitioner argues that the State's failure to comply with Ohio discovery rules rendered his trial fundamentally unfair and that this claim presents an issue regarding the alleged of the Fourth Amendment. *See* Traverse. However, petitioner never presented to the state courts any issue regarding the alleged violation of the Fourth Amendment, and he therefore may not now do so here. Additionally, the record is without support for his claim regarding the alleged violation of the due process clause.

Claim five is without merit.

15

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**PROCEDURE ON OBJECTIONS**

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge